IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION

| | | |
|---|---|---|
| MARILYN PIERCE, | § | |
| On Behalf of Herself | § | |
| and All other similarly situated | § | |
| | § | CASE NO. |
| Plaintiffs, | § | |
| | § | CLASS ACTION COMPLAINT |
| v. | § | |
| | § | JURY TRIAL DEMANDED |
| NORTH DALLAS HONEY COMPANY, | § | |
| a Domestic Corporation, | § | |
| | § | |
| Defendant. | § | |

## CLASS ACTION COMPLAINT

Plaintiff, Marilyn Pierce ("Plaintiff" or "Pierce"), by and through her undersigned counsel, on behalf of herself and all other persons and entities similarly situated, alleges against defendant North Dallas Honey Company d/b/a Nature Nate's, Inc., ("Nature Nate's" or "Defendant") the following facts and claims upon knowledge as to matters relating to herself and upon information and belief as to all other matters and, by way of this Class Action Complaint, avers as follows:

## INTRODUCTION AND SUMMARY OF ACTION

1.      This is a proposed Class action brought by Plaintiff on behalf of herself and other consumers who purchased honey products from Nature Nate's that were labeled "100% RAW HONEY" as described more fully herein.

2.      Unknown to Plaintiff and the Class, the Raw Honey sold by Nature Nate's is not, in fact, raw. Nature Nate's heats its honey to as much as 120 degrees Fahrenheit when it bottles its honey because heated honey is easier to bottle and package.

3.      Nature Nate's honey is also not necessarily 100% honey. Some of the samples tested showed that syrups had been added to the honey so the honey was not comprised of 100% raw honey (hereinafter "Syrup" or "Syrups"). At this point, we cannot say whether Nature Nate adds syrups to its honey. That may in fact have been done by one or more of Nature Nate's suppliers. It is clear however that Nature Nate's additional claim that: "We only bottle the best. That's why we test. And test. And test. No antibiotics, pesticides or herbicides or added corn or rice syrup get past us" (Nature Nate Website <www.naturenates.com>) is false.

4.      Unfortunately, when raw honey is heated to more than 105 degrees, the enzymes in the honey that are prized by consumers become denatured. That is to say, they begin to break down and are lost.

5.      Because Nature Nate's Raw Honey is not raw and can have added syrup, the description on its labels is inaccurate and incorrect. THE PARTIES

6.      Plaintiff Marilyn Pierce ("Plaintiff" or "Pierce") is a natural person and citizen of League City, Texas. Plaintiff does the grocery shopping for her family on a regular basis.

7.      Defendant, North Dallas Honey Company, is Texas Corporation with its principal place of business located at 2910 Nature Nate Farms, McKinney, Texas, and is organized and

existing under the laws of the State of Texas. At all relevant times, Nature Nate's transacted and conducted business in Texas and throughout the United States.

## JURISDICTION AND VENUE

8.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(d)(2) (diversity jurisdiction) and the Class Action Fairness Act, in that (i) there is minimal diversity (Plaintiff seeks to represent a national class of consumers, many of whom are not citizens of Texas and Defendant is domiciled and incorporated in Texas), (ii) the amount in controversy exceeds $5,000,000.00 (Five Million Dollars) exclusive of interests and costs, and (iii) there are 100 or more members of the proposed Plaintiff class.

9.      Venue lies in this District pursuant to 28 U.S.C. §1391 because the Defendant resides in this Judicial District, and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this Judicial District. In addition, Nature Nate's does business and/or transacts business in this Judicial District, and therefore, is subject to personal jurisdiction in this Judicial District and resides here for venue purposes.

## SUMMARY OF THE CASE

10.      This case concerns Nature Nate's mislabeling of its flagship product: "100% Pure Raw and Unfiltered Honey." Nature Nate's fails to disclose to purchasers of its honey products that the honey is not actually pure and not actually raw.

11.      Most or all of the enzymes in Raw Honey are lost when it is heated to a temperature of 105 degrees Fahrenheit or more.

12.     Nature Nate purchases honey from a variety of sources. These sources ship the honey to Nature Nate in large drums. In order to process and package its honey, Nature Nate heats it. On its website, Nature Nate claims that: "We simply warm the honey so that it's easier to deal with and pour into bottles. High heat is a no no. It kills all the good stuff."

13.     This assertion is untrue. Honey that has been heated to a high enough temperature that the enzymes in raw honey break down has an elevated 5-hydroxymethylfurfural (HMF) value. In fact, the scientific community has long understood that HMF values over 40 are strong evidence that honey has been heated enough to break down the enzymes contained in the honey.

14.     The international standard promulgated by Codex Alimentarius for honey has set the maximum limit of HMF in honey at 40 mg/kg to ensure that the product has not undergone extensive heating. The Codex Alimentarius is recognized by the World Trade Organization as an international reference standard for the resolution of disputes concerning food safety and consumer protection.

15.     The sample of Nature Nate's Raw Honey (hereinafter "Honey" or "Raw Honey") that the Plaintiff purchased from a Walmart store near her home in League City on December 22, 2018 had a tested HMF value of 292, more than 7 times the threshold of 40 for table honey.

16.     The elevated HMF value for Mrs. Piece's bottle of Nature Nate's Raw Honey is not an aberration. Additional samples of Nature Nate's Raw Honey have been tested and all demonstrated values of more than 40: they are, in ascending order, 69, 80, 103 and 292 (Pierce sample).

17.    Moreover, Nature Nate representatives have admitted that they heat their Raw Honey beyond the 105-degree threshold. Nature Nate also suggests this on its website, by admitting that it heats its Raw Honey to make it easier to package and bottle.

18.    Despite the fact that its Raw Honey is not in fact raw, Nature Nate advertises on the internet and labels some of its Honey products as "100% Raw." It is such produce purchased by Plaintiff. This is simply false and misleading.

19.    In spite of its knowledge regarding the false labeling of its "100% Raw" Honey products, Nature Nate continues to sell its Raw Honey at prices it could not hope to receive for processed honey, that is honey that is not 100% raw.

20.    At all relevant times, Nature Nate had knowledge that its Raw Honey was heated to the point of being cooked, thereby destroying the enzymes that people seek out and expect from Raw Honey. Nature Nate knew its Raw Honey was mislabeled and that it did not have the health benefits implicitly advertised in its Raw Honey, Nature Nate took no action to: (1) inform purchasers of the defects in its Raw Honey; or (2) recall its mismarked Raw Honey. Nature Nate concealed this knowledge from the Class.

21.    At all relevant times, Nature Nate knew, or should have known, the Raw Honey was (a) defective; (b) would not have the benefits of Raw Honey; and (c) the defect, if known, would have failed to meet the reasonable expectations of consumers, and would not have been, or would not be, sold at the premium price Nature Nate charges for its Raw Honey.

22.    Nature Nate knew, or reasonably should have known, prior to sale to Plaintiff and the Class, that the Raw Honey it offered for sale as raw was not in fact raw and did not contain all of the enzymes found in raw honey.

23.    Nature Nate's conduct, whether committed intentionally or by negligence, thereby deprived consumers such as Plaintiff and the proposed Class of the opportunity to negotiate or pay a lower price to reflect the diminished value of the Raw Honey, or simply avoid buying Nature Nate's Raw Honey altogether.

24.    Consumers, like Plaintiff and the proposed Class, have reasonable expectations that:

   a.    a honey processors' products or marketing such as Nature Nate's would accurately describe their product on their label so that consumers could make their honey purchases based upon accurate information on the label; and/or,

   b.    a honey company processing, producing or marketing, such as Nature Nate, would only sell honey described as 100% raw if it had the perceived physical properties that are associated with raw honey.

**NATURE NATE'S CONDUCT WITH RESPECT TO ITS DECISION
TO COOK THE HONEY AT ISSUE**

25.    Nature Nate has been aware, or but for its negligence or reckless indifference would have known, that its Raw Honey was no longer raw honey after it was cooked.

26.    Nature Nate knew (or but for its negligence or reckless indifference would have known) that it or its distribution channels were receiving, and did receive, honey that had been heated to such a temperature that it ceased to have those properties for which Plaintiff and the proposed Class of consumers buy raw honey. Nature Nate also knew, or should have known, that its

Raw Honey had had syrup added to it. Nature Nate also knew, or should have known, that even if diligently examined or inspected, consumers would not: (a) be capable of determining that Nature Nate's Raw Honey did not have the properties of raw Honey or that syrup had been added to the Honey; and, (b) be able to determine the cause of the problems with the Raw Honey.

27.     Thus, Nature Nate knew (or but for its negligence or reckless indifference would have known) that for the foreseeable future: (a) it was selling honey identified as 100% raw that was not raw and that had been adulterated with syrup; (b) Nature Nate's customers such as Plaintiff and the proposed Class were not aware that they were buying honey that was not 100% raw and not 100% honey; and (c) those customers had a reasonable expectation that Nature Nate would accurately describe its Honey product on its label.

28.     Despite such knowledge, or as a result of its negligence or reckless indifference, Nature Nate did not disclose to the market such as Plaintiff or the proposed Class that it was selling cooked honey with syrup added and that its cooked honey—falsely described as 100% Raw on its label—did not have the chemical properties that Nature Nate and the market attribute to 100% Raw Honey. At all relevant times, Nature Nate had knowledge that the Honey was defective but took no action to: (1) inform purchasers such as Plaintiff and the proposed Class about the Honey or the defects; or (2) recall the Honey. Instead, Nature Nate concealed this knowledge from Plaintiff and the proposed Class.

29.     At all relevant times, Nature Nate knew its 100% Raw Honey was both defective and mismarked, but chose to conceal, suppress, or omit these material facts while distributing,

marketing, and selling its Honey to unsuspecting consumers in Texas and throughout the United States.

## PLAINTIFF PIERCE'S EXPERIENCE

30.     Plaintiff Pierce purchased Nature Nate's 100% Raw Honey in December 22, 2018 at her local Walmart.

31.     Unknown to Plaintiff, the Honey was mislabeled and defective in that it was improperly described as "100% Raw Honey" even though it had been heated to such a degree that the physical properties recognized and promoted by honey industry proponents in raw honey were cooked away and even though syrup had been added to the Honey.

32.     Relying on the efficacy of Nature Nate's labeling information, Plaintiff purchased a bottle of Nature Nate's 100% Raw Honey. Plaintiff had no way of knowing or even of discovering that the Honey was mismarked and defective.

33.     Nature Nate charges a premium for its 100% Raw Honey that is substantially more than other companies charge for their processed honey products, that is honey that is less than 100% raw.

## COMMMON FACTUAL ALLEGATIONS

34.     Upon information and belief, Nature Nate has sold, directly or indirectly (through grocery stores, health food stores, specialty retailers and other retail outlets), thousands of bottles of 100% Raw Honey in Texas and across the United States.

35.     Nature Nate represented that each bottle of 100% Raw Honey conformed to the generally understood definition of raw, that is, with an HMF value of 40 or less and with no syrup additives.

36.     These representations became part of the basis of the bargain when Plaintiff and Class Members purchased the Nature Nate's product marked 100% Raw Honey.

37.     Plaintiff and Class Members relied on Nature Nate's representations on the Honey bottles' labels and on Nature Nate's website and accepted such representations as being true.

38.     However, the Honey does not conform to these express representations and, as alleged herein, Nature Nate breached its express representations concerning its Raw Honey.

39.     The defects and deficiencies in the Honey are due to Nature Nate's decision to heat the honey to make processing and bottling easier and to sell Honey with syrup added to it.

40.     Despite knowing of the defects in its Raw Honey, Nature Nate has not notified all consumers, purchasers or retailers of the defects nor provided uniform relief.

41.     Plaintiff and the proposed Class Members have not received the value for which they bargained when the Raw Honey was purchased by them. There is a difference in value between the Raw Honey as labeled and advertised and the honey as it actually exists.

## CLASS ACTION ALLEGATIONS

42.    Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23. The requirements of

Fed. R. Civ. P. 23(a), (b)(2), (b)(3) and (c)(4) are met with respect to the classes defined below:

> All persons and entities in the United States who made retail purchases
> of Nature Nate's 100% Raw Honey products during the applicable
> limitations period.

Excluded from the Class are: (a) any Judge or Magistrate presiding over this action and members

of their families; (b) Nature Nate and any entity in which Nature Nate has a controlling interest or

which has a controlling interest in Nature Nate and its legal representatives, assigns and successors

of Nature Nate; and (c) all persons who properly execute and file a timely request for exclusion

from the proposed Class.

43.    *Numerosity*: The Class is composed of thousands of persons geographically

dispersed, the joinder of whom in one action is impractical.

44.    *Commonality*: Questions of law and fact common to the Class exist as to all proposed

members of the Class and predominate over any questions affecting only individual members of the

Class. These common legal and factual issues include, but are not limited to the following:

      a.    Whether the 100% Raw Honey is mislabeled;

      b.    Whether the 100% Raw Honey labels are misleading

      c.    Whether Nature Nate's 100% Raw Honey is not in fact raw;

      d.    Whether Nature Nate's 100% Raw Honey has syrup added to it;

      e.    Whether Nature Nate knew or should have known of the defects;

      f.    Whether Nature Nate's labels are misleading;

g.    Whether Nature Nate concealed from consumers and/or failed to disclose to consumers the defects;

h.    Whether Plaintiff and the proposed Class members are entitled to compensatory damages, including, among other things: (i) compensation for all monies paid by members of the Class for Nature Nate's Raw Honey; (ii) the failure of consideration in connection with and/or difference in value arising out of the variance between the Raw Honey as advertised and the Raw Honey as it really is;

i.    Whether Plaintiffs and the proposed Class members are entitled to restitution and/or disgorgement.

j.    Whether Nature Nate falsely advertised and marketed its Raw Honey products to consumers;

k.    Whether the Raw Honey conforms to the applicable industry standards;

l.    Whether Nature Nate concealed the defective nature of the Raw Honey;

m.    Whether Nature Nate's conduct as alleged is misleading deceptive and/or unconscionable.

45.    *Typicality*: Plaintiff's claims are typical of the claims of the proposed members of the Class, as all such claims arise out of Nature Nate's conduct in heating, packaging and bottling its Raw Honey product as well as its marketing, advertising, warranting and selling the defective Honey. Nature Nate's conduct in concealing the defects in the Raw Honey, and Plaintiff's and the proposed Class Members' purchases of the defective Honey.

46.    *Adequate Representation*: Plaintiff will fairly and adequately protect the interests of the members of the Class and has no interests antagonistic to those of the proposed Class. Plaintiff has retained counsel experienced in the prosecution of complex class actions, including consumer class actions involving product liability and product design defects.

47.     *Predominance and Superiority*: This class action is appropriate for certification because questions of law and fact common to the members of the Class predominate over questions affecting only individual members, and a Class action is superior to other available methods for the fair and efficient adjudication of this controversy, since individual joinder of all members of the Class is impracticable. Should individual Class Members be required to bring separate actions, this Court and Courts throughout Texas would be confronted with a multiplicity of lawsuits burdening the court system while also creating the risk of inconsistent rulings and contradictory judgments. In contrast to proceeding on a case-by-case basis, in which inconsistent results will magnify the delay and expense to all parties and the court system, this class action presents far fewer management difficulties while providing unitary adjudication, economies of scale and comprehensive supervision by a single Court.

## COUNT I
## NEGLIGENCE

48.     Plaintiff on behalf of herself and all others similarly situated adopts and incorporates by reference all foregoing allegations as though fully set forth herein.

49.     At all times material hereto, Nature Nate purchased, processed, packaged and sold honey it labeled as 100% Raw Honey.

50.     Nature Nate had a duty to Plaintiff and to members of the class to process the honey so that it was not heated to the point that the physical properties of raw honey recognized in the honey industry and by consumers were lost and it had a duty to ensure that its Honey did not contain syrup.

51.     Nature Nate had a duty to Plaintiff and to members of the class to test the Raw Honey to ensure that it retained the properties of 100% raw honey.

52.     Nature Nate had a duty to Plaintiff and to class members to ensure that the Honey was as properly labeled and suitable to such labeling, either by properly testing or by verifying third-party test results of such Honey.

53.     Nature Nate failed to exercise ordinary and reasonable care in the processing and bottling of the Raw Honey and in determining whether the Raw Honey that it sold, and continues to sell, was defective resulting in the failure of the Raw Honey to perform as reasonably expected by consumers.

54.     Nature Nate breached its duty to the Plaintiff and the proposed Class to test the Raw Honey to ensure adequate performance of the Raw Honey.

55.     Nature Nate breached its duty to Plaintiff and to the Class to ensure that the Raw Honey was suitable, either by properly testing or by verifying third-party test results such Honey.

56.     Nature Nate breached its duty to Plaintiff and to the Class to ensure that the Raw Honey complied accepted with industry standards for 100% raw honey.

57.     The negligence of Nature Nate, its agents, servants, and/or employees, include the foregoing, as well as the following acts and/or omissions:

        a.     processing, distributing, delivering, supplying, inspecting, marketing and/or selling Raw Honey without adequately and thoroughly testing it for conformance to industry standards for 100% raw honey;

   6880889 v1 (71868.00002.000)

b.     negligently failing to ensure that the Raw Honey conformed to all applicable industry and consumer standards; and

c.     concealing information concerning the defects inherent in the Raw Honey from Plaintiffs and the Class members, while knowing that Nature Nate's Raw Honey was defective and non-conforming with accepted industry standards.

58.     Plaintiff and the Class have been damaged because the defective 100% Raw Honey is not 100% raw honey and does not contain the materials that make raw honey such a healthy food for people as recognized and promoted by the honey industry.

59.     Plaintiff and the Class have also been damaged as a direct and proximate result of the negligence, carelessness, recklessness, willfulness, and wantonness of Nature Nate as aforesaid.

60.     To the extent that Nature Nate's conduct was grossly negligent, reckless, willful, wanton, intentional, fraudulent or the like, Plaintiff and the class are entitled to an award of punitive damages against Nature Nate.

## COUNT II
## VIOLATION OF THE TEXAS DECEPTIVE TRADE PRACTICES ACT, TEXAS STAT. ANN. SEC. 17.41, ET SEQ

61.     Plaintiff on behalf of herself and the Class, adopts and incorporates by reference all foregoing allegations as though fully set forth herein.

62.     The conduct described above and throughout this Complaint was committed by a Texas corporation and constitutes unfair business practices in violation of the Texas Deceptive Trade Practices Act, Texas Stat. Ann. Sec. 17.41, et seq. (hereinafter, "TDTPA").

63.     The TDTPA applies to the claims of Plaintiff and all Class members because the conduct which constitutes violations of the TDTPA by the Defendant occurred within the State of Texas and was committed by a Texas company.

64.     The TDTPA prohibits unfair methods of competition and unfair and deceptive acts or practices, including among other things, "False, misleading, or deceptive acts or practices in the conduct of any trade or commerce."

65.     Nature Nate engaged in the concealment, deception, suppression, or omission of material facts in violation of the TDTPA when, in selling and advertising the Nature Nate's 100% Raw Honey, Nature Nate knew that the Honey was not in fact 100% raw, and that it had been stripped of all or many of its physical properties recognized by the honey industry and its consumers.

66.     Nature Nate engaged in false, misleading and deceptive acts when it misrepresented the nature and purity of its Honey as well as its claim that it tested its Honey constantly to ensure that its claims were accurate, with the intent that others, such as Plaintiff and the Class would rely upon, as if true, the deception and misrepresentations of material facts and purchase Nature Nate's 100% Raw Honey.

67.     Plaintiff and the class would not have purchased the Raw Honey, or would not have paid the elevated price of 100% Raw Honey, had they known or become informed of the material defects in the Honey.

68.     Nature Nate's deception and misrepresentation or omission of material facts as alleged herein constitute unfair, deceptive and fraudulent business practices within the meaning of the TDTPA.

69.     Nature Nate has acted unfairly and deceptively by misrepresenting the nature and quality of the Raw Honey.

70.     Nature Nate either knew, or should have known, that the Honey was defectively processed, packaged and labeled when the Honey was heated to temperatures above 105 degrees, such that the Honey was not as advertised or described.

71.     Upon information and belief, Nature Nate knew that, at the time the Raw Honey left Nature Nate's control, the Honey was defective as described herein. At the time of sale, the Honey was defective as described.

72.     As a direct and proximate cause of the violation of the TDTPA described above, Plaintiff and members of the Class have been injured in that they have purchased Nature Nate's Raw Honey that is not raw 100% honey and has lost all or many of the physical properties of 100% raw honey as a result of being heated as alleged. Had Plaintiff and Class Members known the defective nature of the Raw Honey, they would not have purchased their honey, or would have paid a lower price for their honey.

73.     Nature Nate used unfair methods of competition and unfair or deceptive acts or practices in conducting its business. This conduct constitutes fraud within meaning of the TDTPA.

This unlawful conduct is continuing, with no indication that the wrongful conduct of Nature Nate will cease.

74.     As a direct and proximate result of Nature Nate's unfair and deceptive acts and practices, Plaintiff and the other members of the Class will suffer damages, which include, without limitation, costs to replace their Raw Honey with products that are truly 100% raw honey, in an amount to be determined at trial.

75.     As a result of the acts of consumer fraud described above, Plaintiff and the Class have suffered ascertainable losses in the form of actual damages that include the purchase price of the Raw Honey for which Nature Nate is liable to the Plaintiff and the Class, for treble their ascertainable losses, plus attorneys' fees and costs, along with equitable relief prayed for herein in this Complaint.

## COUNT III
## FRAUDULENT MISREPRESENTATION

76.     Plaintiff on behalf of herself and all others similarly situated, adopt and incorporate by reference all foregoing allegations as though fully set forth herein.

77.     Nature Nate falsely and fraudulently represented to Plaintiff, the Class, and/or the consuming public in general that its Raw Honey was 100% Honey and that it had not been heated to such an extent that its physical properties   were altered, compromised or destroyed and that the honey was in fact 100% raw honey.

78.     Nature Nate falsely represented to purchasers and consumers, that its 100% Raw Honey was 100% raw honey when in fact the Honey had had syrup added to it and the Honey had been heated, thereby compromising, altering and/or losing its 100% raw honey properties.

79.     When these representations were made by Nature Nate, upon information and belief, they knew those representations to be false and they willfully, wantonly, and recklessly disregarded whether the representations were true.

80.     These representations were made by Nature Nate with the intent of defrauding and deceiving the Plaintiff, the Class and/or the consuming public, all of which evidence reckless and/or willful, indifference to the safety and welfare of the Plaintiff and the Class members.

81.     At the time the aforesaid, representations were made by Nature Nate, Plaintiff and the Class were unaware of the falsity of said representations and reasonably believed them to be true.

82.     In reliance upon said representations, Plaintiff and the Class purchased Nature Nate's Raw Honey, thereby sustaining damages and injuries and/or being at an increased risk of sustaining damages and injuries in the future.

83.     Nature Nate knew and was aware, or should have reasonably been aware, that its 100% Raw Honey was defective and not fit for its customary and normal use.

84.     Nature Nate brought its Raw Honey to the consumer market and acted fraudulently, wantonly, and maliciously to the detriment of the Plaintiff and the Class.

## COUNT IV
## FRAUDULENT CONCEALMENT

85.     Plaintiff on behalf of herself and all others similarly situated, adopts and incorporates by reference all foregoing allegations as though fully set forth herein.

86.     Nature Nate knew or should have known that its Raw Honey was defective and not fit for its ordinary and intended use, and did not performed in accordance with either the advertisements and marketing materials of Nature Nate or to the reasonable expectations of ordinary consumers including Plaintiff.

87.     Nature Nate fraudulently concealed from and/or intentionally failed to disclose to Plaintiff and the Class that its "100% Raw Honey" was defective.

88.     Nature Nate had exclusive knowledge of the defective nature of its 100% Raw Honey at the time of sale. The defect is latent and not something that Plaintiff or the Class, in the exercise of reasonable diligence, could have discovered independently prior to purchase.

89.     Nature Nate had the capacity to, and did, deceive Plaintiff and the Class into believing that they were purchasing 100% Raw Honey that was free from defects, including heating and added Syrups.

90.     Nature Nate undertook active and ongoing steps to conceal the defects. Plaintiff is aware of nothing in Nature Nate's advertising, publicity or marketing materials that disclosed the truth about its Raw Honey, despite Nature Nate's awareness of the problem.

91.     The facts concealed and/or not disclosed by Nature Nate to Plaintiff and the Class members are material in that a reasonable person would have considered them important in deciding whether to purchase (or to pay the same price for) the Raw Honey.

92.     Nature Nate intentionally concealed and/or failed to disclose material facts for the purpose of inducing Plaintiff and the Class to act thereon.

93.     Plaintiff and the Class justifiably acted and relied upon the concealed and/or misrepresented the facts to their detriment, as evidenced by their purchase of the Raw Honey.

94.     Plaintiff and the Class suffered a loss of money in an amount to be proven at trial as a result of Nature Nate's fraudulent concealment and nondisclosure because: (a) they would not have purchased the Raw Honey on the same terms if the facts concerning the defective 100% Raw Honey had been known; (b) they paid a price premium because they believed the Raw Honey would be 100% raw honey, raw and otherwise free from defects including additive Syrups; and (c) the 100% Raw Honey did not perform as promised.

95.     By reason of the foregoing, Plaintiff and the Class suffered, and continue to suffer, financial injury.

## COUNT V
## UNJUST ENRICHMENT

96.     Plaintiff, on behalf of herself and all others similarly situated, adopts and incorporates by reference all foregoing allegations as though fully set forth herein.

97.     Plaintiff and the Class conferred a benefit on Defendant when they purchased the 100% Raw Honey.

98.     Nature Nate has been unjustly enriched in retaining the revenues derived from Class members' purchases of the 100% Raw Honey, the retention of which under these circumstances is unjust and inequitable because the 100% Raw Honey was defective, not fit for its ordinary and intended use, and performed in accordance with neither the advertisements, marketing materials and warranties disseminated by Nature Nate nor the reasonable expectations of ordinary consumers and caused the Plaintiff and Class members to lose money as a result thereof.

99.     Plaintiff and Class members suffered a loss of money as a result of Nature Nate's unjust enrichment because: (a) they would not have purchased the Raw Honey on the same terms if the facts concerning the defective 100% Raw Honey had been known; (b) they paid a price premium because they believed that the 100% Raw Honey would be free from defects; and (c) the 100% Raw Honey did not perform as promised.

100.     Because Nature Nate's retention of the non-gratuitous benefit conferred on them by Plaintiff and Class is unjust and inequitable, Nature Nate must pay restitution to Plaintiff and the Class for their unjust enrichment, as ordered by the Court.

101.     Plaintiff and the Class are entitled to restitution of, disgorgement of, and/or the imposition of a constructive trust upon, all profits, benefits, and other compensation obtained by the Defendant from its deceptive, misleading, and unlawful conduct.

## COUNT VI
## VIOLATION OF MAGNUSON-MOSS ACT

102.    Plaintiff on behalf of herself and all others similarly situated, adopts and  incorporates by reference all foregoing allegations as though fully set forth herein.

103.    The Magnuson-Moss Consumer Products Liability Act, 15 U.S.C §2301, et seq. ("MMCPWA" or the "Act") provides a private right of action to purchasers of consumer products against retailers who, *inter alia*, fail to comply with the terms of a written warranty, express warranty and/or implied warranty. As demonstrated above, Nature Nate has failed to comply with the terms of its express and implied warranties with regard to the Raw Honey that it advertised, distributed, marketed and/or sold.

104.    Plaintiff and the members of the Class are "consumers" under the MMCPWA.

105.    Nature Nate's 100% Raw Honey is a consumer product as defined by the statute.

106.    Nature Nate has been given a reasonable opportunity by Plaintiff and the Class to cure such failures to comply with its warranties and has failed to do so.

107.    By virtue of the foregoing, Plaintiff and the Class are entitled to an award of damages and other appropriate relief, including attorneys' fees.

## COUNT VII
## DECLARATORY RELIEF 28 U.S.C. § 2201

108.    Plaintiff, on behalf of herself and all others similarly situated, adopts and incorporates by reference all foregoing allegations as though fully set forth herein.

109.    A justiciable controversy of fact exists such that the court may provide declaration relief.

110.    Defendant has acted or refused to act on grounds that apply generally to the Class, so that final declaratory relief is appropriate respecting the Class as a whole within the meaning of Fed. R. Civ. P. 23(b)(2).

111.    Plaintiff seeks a declaratory ruling that:

    a.    the 100% Raw Honey has a defect caused by Nature Nate's processing, heating and bottling methods, which causes the honey to lose the physical properties people seek in raw honey. The 100% Raw Honey has an additional defect in that it contains Syrup in place of honey. The Court finds that these defects are material and require public disclosure of all of the 100% Raw Honey sold by Nature Nate over the last 3 years;

    b.    Nature Nate will establish a testing program and protocol, under Court supervision, to be communicated to class members, which will require Nature Nate to inspect all 100% Raw Honey products in sufficient numbers to ensure that the Raw Honey is in fact 100% raw honey for a period of 5 years.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of herself and all others similarly situated, prays for a judgment against Defendant as follows:

    c.    For an order certifying the Class, pursuant to Fed. R. Civ. P. Rule 23, appointing Plaintiff as representative of the Class, and appointing the law firms representing Plaintiffs as Class Counsel;

    d.    For compensatory damages sustained by Plaintiff and the Class;

    e.    For equitable and/or declaratory relief;

    f.    For payment of costs of suit herein incurred;

    g.    For both pre-judgment and post-judgment interest on any amounts awarded;

    h.    For punitive damages;

      i.      For payment of reasonable attorneys' fees and expert fees as may be allowable under applicable law; and

      j.      For such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff on behalf of herself and on behalf of the Class, hereby demands a trial by jury as to all issues so triable.

Dated:  February 19, 2019

Respectfully Submitted,

**KANE RUSSELL COLEMAN LOGAN PC**

By: */s/ Kenneth W. Biermacher*
    Kenneth W. Biermacher
    State Bar No. 02302400
    E-mail: kbiermacher@krcl.com

3700 Thanksgiving Tower
1601 Elm Street
Dallas, Texas  75201
Telephone:   (214) 777-4200
Facsimile:    (214) 777-4299

-AND-

**KENT A. HEITZINGER & ASSOCIATES**

By: */s/ Kent A. Heitzinger*
    Kent A. Heitzinger
    Illinois Bar No. 3123385
    E-mail: heitzinger.law@gmail.com

1056 Gage St., # 200
Winnetka, IL 60093
Phone: (847) 446-2430

*(Pro Hac Vice To Be Filed)*

**THE LAW OFFICE OF TERRENCE BUEHLER**

By: */s/ Terrence Buehler*
     Terrence Buehler
     Illinois Bar No. 6181738
     E-mail: tbuehler@tbuehlerlaw.com

1 South Wacker Drive, Suite 3140
Chicago, IL 60606
Phone: (312) 371-4385

***(Pro Hac Vice To Be Filed)***